**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-218-1 |
| | ) | |
| JAMAAL MARAGH | ) | |

**<u>MEMORANDUM OPINION</u>**

Presently before the Court is Defendant Jamaal Maragh's Motion to Dismiss (Speedy Trial), (Docket No. 2180), in which he argues that the Indictment against him should be dismissed because both his statutory and Sixth Amendment right to a speedy trial has been violated. The Government opposes Defendant's Motion. (Docket No. 2241 at 39-48). After careful consideration of the parties' positions, Defendant's Motion to Dismiss will be denied.

**I.    <u>BACKGROUND</u>**

On August 25, 2020, Defendant and 26 co-defendants were charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, for conduct occurring from in and around October 2018 until in and around June 2020. (Docket No. 3). A warrant was issued for Defendant's arrest on August 25, 2020, (Docket No. 7), but he was not immediately arrested, and an order was entered on March 1, 2021 declaring him (and several other co-defendants) a fugitive. (Docket No. 568). As the Government explained, Defendant subsequently was apprehended in his home country of Jamaica. (Docket No. 2241 at 40). He was arrested there on a provisional arrest warrant after which he waived extradition proceedings and was extradited to the United States in connection

1

with this case.[1]  (*Id.*).  Following Defendant's arrest, Attorney David Chontos was appointed to represent him, he made an initial appearance and was arraigned on April 23, 2021, he pled not guilty to the charge, and he waived a detention hearing.  (Docket Nos. 633, 634, 635, 636, 649).

Given the volume of discovery involved in this multi-defendant case, by the time Defendant was apprehended and arraigned, his co-defendants already had sought, and were granted, extensions of time to file pretrial motions for the period from September 9, 2020 through September 3, 2021.  (*See, e.g.*, Docket Nos. 120, 138, 314, 516, 543, 664, 669).  The co-defendants thereafter continued to request, and were granted, additional extensions of time to file pretrial motions well beyond that date.  (*See, e.g.*, Docket Nos. 744, 765, 798, 826).  The Court's Orders granting the co-defendants' motions for extension of time to file pretrial motions contained findings excluding all of the referenced time under the Speedy Trial Act.  (*See id.*).

As for Defendant, while represented by Attorney Chontos, he sought, and was granted, extensions of time to file pretrial motions for the time period from May 24, 2021 through March 3, 2022.  (Docket Nos. 693, 763, 827).  The Court's Orders granting Defendant's motions for extension of time to file pretrial motions contained findings excluding all of the referenced time under the Speedy Trial Act.  (*See id.*).

---

1        Defendant does not contest that he was apprehended in his home country of Jamaica or that he waived extradition proceedings.  Nonetheless, he claims that the Government's delay in bringing him into custody is akin to the circumstances in *United States v. Davenport*, 729 F. Supp. 3d 475 (W.D. Pa. 2024), in which this Court granted a speedy trial challenge.  Defendant offers no explanation or evidentiary support showing how his situation is similar to *Davenport*.  Suffice to say, it is not.  In *Davenport*, the defendant presented evidence at a hearing establishing that the Government was not reasonably diligent in attempting to locate and apprehend him after the indictment was filed, (*id.* at 489-91), and therefore showed that his defense was prejudiced by the loss of his ability to present potentially favorable evidence due to a 16-month delay between when the indictment was filed and his arrest.  (*Id.* at 493-94).  In doing so, the defendant identified a witness who could have provided potentially exculpatory testimony but who was shot and killed just days before he was arrested, there was no indication any other witness would be able to provide similar testimony, and the defendant had no reason to preserve the witness' testimony since he was unaware of the indictment against him until he was arrested.  (*Id.* at 493).  Defendant points to no such similar circumstances here, and nothing in the record indicates that the Government was not reasonably diligent in attempting to locate and apprehend him in Jamaica.  Accordingly, the Court rejects Defendant's undeveloped and unsupported speedy trial challenge to the extent it is premised on *Davenport*.

2

On December 14, 2021, Attorney Randall McKinney entered his appearance as retained counsel for Defendant, and Attorney Chontos withdrew from the case. (Docket Nos. 828, 844, 845). While represented by Attorney McKinney, Defendant sought, and was granted, extensions of time to file pretrial motions for the time period from March 2, 2022 through June 5, 2023. (Docket Nos. 928, 1022, 1104, 1211, 1309). The Court's Orders granting the Defendant's motions for extension of time to file pretrial motions included findings excluding all of the referenced time under the Speedy Trial Act. (*See id.*).

On April 13, 2023, Attorney Tyresha Brown O'Neal moved to appear pro hac vice as retained counsel for Defendant, which the Court granted, and Attorney McKinney subsequently withdrew from the case. (Docket Nos. 1345, 1346, 1347, 1799, 1800). While represented by Attorney Brown O'Neal, Defendant sought, and was granted, extensions of time to file pretrial motions for the time period from June 1, 2023 through August 6, 2024. (Docket Nos. 1370, 1467, 1551, 1636, 1722). The Court's Orders granting the Defendant's motions for extension of time to file pretrial motions contained findings excluding all of the referenced time under the Speedy Trial Act. (*See id.*).

On August 6, 2024, Defendant filed a Motion to Suppress Wiretap Evidence, the Court entered a briefing order on the Motion, and the Government subsequently sought additional time to respond, to which the defense consented. (Docket No. 1801, 1806, 1833). The Court's Order granting the Government's requested extension and resetting the briefing schedule included findings excluding time under the Speedy Trial Act from August 6, 2024 through October 23, 2024. (Docket No. 1834).

In the interim, on September 12, 2024, Defendant filed a motion for a pre-plea presentence investigation report to obtain the calculation of his criminal history score and ascertain career

offender status.  (Docket Nos. 1836).  The motion did not include the required consent form signed by Defendant; thus, it subsequently was refiled on October 29, 2024 with the complete information and then granted by the Court.  (Docket Nos. 1852, 1853). The Court's Order granting the Defendant's motion for a pre-plea presentence investigation report contained findings excluding time under the Speedy Trial Act from October 29, 2024 through January 13, 2025.  (Docket No. 1853).

On December 24, 2024, Attorney Brown O'Neal moved to withdraw as counsel for Defendant because of a disciplinary matter, which the Court granted.  (Docket Nos. 1885, 1888). To ensure continuity of counsel for Defendant, the Court appointed his current counsel, Attorney Martin Dietz, to represent him (with the proviso that the Court may require Defendant to pay all or part of the cost of his representation at the conclusion of the case).  (Docket No. 1887).

On January 14, 2025, Attorney Dietz filed a supplemental motion for a pre-plea presentence investigation report to obtain certain clarifying information that was not contained in the previously produced report, which the Court granted.  (Docket Nos. 1902, 1903).  The Court's Order granting the Defendant's supplemental motion for a pre-plea presentence investigation report included findings excluding time under the Speedy Trial Act from January 14, 2025 through March 28, 2025.  (Docket No. 1903).

Thereafter, Defendant filed numerous motions for extension of time to file pretrial motions for the time period from March 31, 2025 to March 30, 2026, which the Court granted.  (Docket Nos. 1949, 1975, 2009, 2059, 2077, 2103, 2127, 2154).  The Court's Orders granting Defendant's motions for extension of time to file pretrial motions contained findings excluding all of the referenced time under the Speedy Trial Act.  (*See id.*).

4

Ultimately, on March 30, 2026, Defendant filed eleven additional pretrial motions, including the Motion to Dismiss which is presently before the Court. (Docket Nos. 2169, 2171, 2172, 2174, 2176, 2178, 2180, 2187, 2195, 2196, 2197). After the Court ordered briefing on Defendant's additional pretrial motions, the Government sought extensions of time to file its omnibus response, which was filed on June 8, 2026. (Docket Nos. 2203, 2216, 2228, 2237, 2239, 2241). The defense consented to the Government's requested extensions of time to respond, (Docket Nos. 2216, ¶ 5; 2228, ¶ 7; 2237, ¶ 7; 2239), and the Court's Orders granting them included findings excluding time under the Speedy Trial Act from March 30, 2026 to June 22, 2026, which was the date that Defendant was ordered to file a reply if he wished to do so. (Docket No. 2203, 2222, 2229, 2238, 2240). Defendant did not file a reply by the established deadline, and his Motion to Dismiss is now ripe for disposition.

## II.    ANALYSIS

Defendant argues that the Indictment should be dismissed for violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, and for violation of his Sixth Amendment right to a speedy trial, contending that there has been unnecessary delay in bringing him to trial. (Docket No. 2180, ¶¶ 4, 11). Defendant suggests that his ability to defend himself has been impaired by the passage of time, (*id.*, ¶ 12), but he does not elaborate how that is so. He also asserts, without any analysis or support, that the Indictment should be dismissed pursuant to Federal Rule of Criminal Procedure 48(b)(3).[2] (*Id.*, ¶ 19).

---

2    Defendant additionally incorporates arguments raised by co-Defendant Manuel Murrietta in his Brief in Support of Motion to Dismiss for Speedy Trial Violation filed at Docket No. 944, which Motion the Court denied in its entirety. (Docket Nos. 2180, ¶ 20; 1030; 1031). Accordingly, the Court incorporates herein the analysis and rationale set forth in its Memorandum Opinion denying co-defendant Murrietta's Motion to Dismiss. (Docket No. 1030; *see United States v. Murrietta*, Crim. No. 20-218-17, 2022 WL 2117766 (W.D. Pa. June 13, 2022)).

Finally, Defendant also asserts that the Government failed to adhere to the requirements of Federal Rule of Criminal Procedure 9(b)(1) (which incorporates Rule 4(b)(1)) because the arrest warrant commands that Defendant be arrested and brought forthwith to the nearest magistrate judge, but it does not also specify that he be brought before a state or local judicial officer if a magistrate judge is not reasonably available. (Docket No. 2180, ¶¶ 5-8). Defendant

In response, the Government maintains that no violation has occurred under the Speedy Trial Act, and it also submits that there is no Sixth Amendment violation here in consideration of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).  (Docket No. 2241 at 39-48). The Government is correct that dismissal is not warranted by statute, nor is it constitutionally required under the Sixth Amendment.

### A.  <u>Defendant's Statutory Speedy Trial Right Has Not Been Violated</u>

To give effect to the Sixth Amendment right to a speedy trial, Congress enacted the Speedy Trial Act, which sets "specified time limits after arraignment or indictment within which criminal trials must be commenced."  *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988). The Speedy Trial Act requires that a criminal defendant be brought to trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  However, the Speedy Trial Act also recognizes the need for flexibility depending on the circumstances of particular cases and therefore "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."  *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h).  If a defendant is not brought to trial within the time limit established by Section 3161(c), as extended by 18 U.S.C. § 3161(h), the information or indictment shall be dismissed upon motion

---

does not explain how this argument relates to, or advances, his statutory or constitutional speedy trial claims, nor does he cite any legal authority for the proposition that an alleged technical violation of Rule 9(b)(1) warrants dismissal of the Indictment, to the extent that is his contention.  Consequently, the Court rejects this undeveloped argument, but nevertheless observes that Defendant "would not be entitled to the drastic relief he seeks because a technical violation [of Rule 9(b)(1)] 'will not support the dismissal of an indictment.' "  *United States v. Snead*, Crim. No. 20-32, 2020 WL 4187774, at *3 (W.D. Pa. July 21, 2020) (quoting *United States v. Sollenberger*, 2008 WL 1981539, at *2 (M.D. Pa. May 2, 2008)).

of the defendant.  18 U.S.C. § 3162(a)(2).  Defendant bears the burden of proof of supporting such motion.  (*Id.*).

In ruling on a defendant's motion to dismiss an indictment for a Speedy Trial Act violation, the district court "must tally the unexcluded days.  This, in turn, requires identifying the excluded days." *Zedner*, 547 U.S. at 507.  As stated, § 3161(h) enumerates certain periods of delay that are excluded in computing the time within which trial must start.  18 U.S.C. § 3161(h).  As recounted in detail in Section I, *supra*, a tally of the days properly excluded from the speedy trial clock under § 3161(h) conclusively establishes that there has been no Speedy Trial Act violation in this case. From Defendant's arraignment on April 23, 2021 through the filing of his array of pretrial motions, the speedy trial clock was stopped by virtue of the numerous motions for extensions of time filed either by Defendant or one or more of his co-defendants[3] under § 3161(h)(7)(A), based on the Court's contemporaneous findings that the ends of justice served by granting such continuances outweighed the best interests of the public and Defendant in a speedy trial.  Defendant and co-defendant Perez Lopez filed numerous pretrial motions on March 30, 2026, and then subsequently consented to the Government's requested extensions of time to respond to the motions, which are presently being litigated, thus the speedy trial clock has been tolled under 18 U.S.C. § 3161(h)(1)(D) which excludes "delay resulting from any pretrial motion, from the filing of the

---

3        Defendant's statutory Speedy Trial argument entirely ignores § 3161(h)(6) of the Act, which explicitly provides that "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" shall be excluded in computing the time in which trial must commence.  18 U.S.C. § 3161(h)(6).  Thus, after defendants are joined for trial, and unless and until a severance is granted, "an exclusion applicable to one defendant applies to all codefendants." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) (internal quotation marks and citation omitted).  Here, Defendant was joined for trial with multiple co-defendants, and is still joined with co-defendant Perez Lopez, who continually moved for extensions of time to file pretrial motions until March 30, 2026 and then filed pretrial motions which are being litigated.  Defendant never made a motion for severance.  Thus, the time which was properly excluded under the Act as to one or more of his co-defendants likewise created excludable delays for Defendant. *See Arbelaez*, 7 F.3d at 347; *United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (delay resulting from co-defendants' motions served to toll the speedy trial clock for all defendants under Act).

motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

Defendant has not sustained his burden to support his Motion to Dismiss for an alleged violation of the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2). Rather, he only broadly claims that "the delay in this case exceeds statutory limits [and] is not fully excludable under the Speedy Trial Act," (Docket No. 2180, ¶ 4), but he fails to specify which time frames supposedly are not "fully excludable." Other than that, Defendant contends that he previously expressed his refusal to consent to additional extensions of time requested by one of his prior lawyers (but he does not identify which lawyer or when that occurred).[4] (*Id.*, ¶ 10). However, the Speedy Trial Act provides that an "ends of justice" continuance can be granted by a judge "at the request of the defendant or his counsel." 18 U.S.C. § 3161(h)(7)(A). "Therefore, [an] attorney's requests for and agreement to continuances exclude them from the days counted towards the Speedy Trial Act clock." *United States v. Green*, 516 F. App'x 113, 122 (3d Cir. 2013) (citing *New York v. Hill*, 528 U.S. 110, 115 (2000)).

To reiterate, all of the time between Defendant's arraignment on April 23, 2021 through the current litigation on his pretrial motions properly is excluded from the computation of speedy trial time under the provisions of the Act, as detailed in Section I, *supra*, therefore the Court finds that the Speedy Trial Act has not been violated in this case. Before turning to consider Defendant's constitutional claim, it is worth noting that the Speedy Trial Act's protections "exceed those of the

---

4    The Court presumes Defendant refers to Attorney McKinney, given that the Court received correspondence from Defendant on April 12, 2023, wherein Defendant critiques Attorney McKinney's handling of his case, including that Attorney McKinney supposedly requested extensions of time without his knowledge or permission. (Docket No. 1343). The Court's staff provided Attorney McKinney a copy of Defendant's letter on the date it was received and asked that he promptly respond whether a status conference was necessary. Attorney McKinney subsequently advised via email that he met with Defendant on April 14, 2023, and there was no need for a status conference. Nevertheless, Attorney Brown O'Neal moved to appear pro hac vice to represent Defendant as retained counsel on April 13, 2023, which the Court granted. (Docket Nos. 1345, 1346). As detailed herein, Attorney Brown O'Neal continued to move for extensions of time to file pretrial motions, to which Defendant never voiced disagreement or objection, thereby undermining his speedy trial claim to the extent it is premised on his prior counsel's requests for additional time to file pretrial motions on his behalf.

Sixth Amendment, which does not require that a trial commence within a specified time." *United States v. Lattany*, 982 F.2d 866, 870 n.5 (3d Cir. 1992). Because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.' " *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)). As next discussed, this is not one of those unusual cases.

### B. Defendant's Sixth Amendment Right to a Speedy Trial Has Not Been Violated

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. CONST. amend. VI. In *Barker*, 407 U.S. at 530-32, the United States Supreme Court set forth a four-factor test for examining alleged Sixth Amendment violations. "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530-31). None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

Although Defendant references *Barker's* four-factor test in his Motion, (*see* Docket No. 2180, ¶ 4), he does not analyze those factors, other than to generally suggest that he has been prejudiced, let alone convincingly argue that consideration of the four factors weighs in favor of finding that his Sixth Amendment right to a speedy trial has been violated. Despite Defendant's

9

undeveloped Sixth Amendment claim, the Court turns to analyze the *Barker* factors.

The first factor asks whether the delay is of sufficient length to trigger analysis of the remaining factors. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (treating length of delay as "a double enquiry" requiring a showing of presumptively prejudicial delay before considering the other three factors). If the delay is unusually lengthy, then the remaining *Barker* factors must by analyzed. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (citing *Barker*, 407 U.S. at 530) ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.")). The Third Circuit Court of Appeals has held that a delay of 45 months or longer is sufficient for the first *Barker* factor. *See United States v. Battis*, 589 F.3d 673, 683 (3d Cir. 2009). Here, the delay from the Indictment (August 25, 2020) to the present (approximately 71 months) satisfies this factor. *See Claxton*, 766 F.3d at 294 (explaining that delay is measured "from the date of arrest or indictment, whichever is earlier, until the start of trial") (quoting *Battis*, 589 F.3d at 678). Therefore, the "presumptive prejudice" needed to consider the remaining three factors exists in this case. *See Doggett*, 505 U.S. at 652 n.1.

Before analyzing the other *Barker* factors, it bears emphasizing that " '[p]resumptive prejudice,' when used in this threshold context simply 'marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.' " *Hakeem*, 990 F.2d at 759 (quoting *Doggett*, 505 U.S. at 652, n.1). Notably, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. For instance, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. The instant case is a complex drug conspiracy charge that involves 27

defendants, who, along with their counsel, had to review extensive discovery involving Title III wiretaps, analyze evidence, research and consider whether to file pretrial motions, and litigate the case (initially subject to policies implemented in response to the Covid-19 pandemic), which explains the bulk of the delay. With that said, the Court proceeds to consider the other three *Barker* factors in light of the delay.

As to the second factor – the reason for delay – the Court must calculate the delay attributable to each party and differentiate the delay caused by Defendant from that caused by the Government. *See Claxton*, 766 F.3d at 294. " '[D]elay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.' " *Battis*, 589 F.3d at 679-80 (quoting *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009)). Delay caused by the Government is grouped into three categories and each carries different weight: (1) "[a] deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government;" (2) "[a] more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Claxton*, 766 F.3d at 295 (citation omitted).

As detailed above, Defendant clearly acquiesced to delay from the inception of this case through March 30, 2026 by repeatedly requesting extensions of time to file pretrial motions and ultimately filing additional pretrial motions on that date, in addition to the suppression motion he previously had filed. Further, Defendant has been joined for trial with numerous co-defendants, who also repeatedly sought and were granted extensions of time to file pretrial motions, to which Defendant never objected. Defendant remains joined for trial with co-defendant Perez Lopez who filed a litany of pretrial motions, which are currently being litigated. Therefore, the majority of

11

the delay in this case is attributable to Defendant and his co-defendants,[5] which weighs against him. *See United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) ("Defendants bear the responsibility of delay caused by their co-defendants, and such delay cannot be attributed to the Government.") (citing *Claxton*, 766 F.3d at 295).

Even if any delay attributable to Defendant could somehow be imputed to the Government because it consented to the requested extensions of time to file pretrial motions and occasionally requested extensions of time to respond to Defendant's filings (to which Defendant consented), it is a neutral reason, at best, for the delay which does not weigh heavily against the Government. More importantly, nothing in the record suggests that the Government made a deliberate effort to delay the case in order to hamper the defense. Overall, the delay in this case is attributable either to Defendant (or his co-defendants, who also continually requested additional time to file pretrial motions), thus the reason for the delay weighs heavily against Defendant.

Next, the third *Barker* factor requires the Court to assess " '[w]hether and how a defendant asserts his [speedy-trial] right,' including 'the frequency and force' of such assertions." *Velazquez*, 749 F.3d at 181-82 (quoting *Barker*, 407 U.S. at 529, 531). This factor permits "a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker*, 407 U.S. at 529. Importantly, when a defendant is represented by counsel, "he should identify 'a motion or some evidence of direct instruction to counsel to assert the right at a time

---

5       The Court's finding in this regard is not meant as a criticism of the defense, as the record reflects that the requested extensions of time (and corresponding delay) were utilized by Defendant and co-defendant Perez Lopez to vigorously test the Government's case through fulsome motions practice, which only can occur after review of extensive discovery, investigation, research, and briefing of issues for review by the Court.

when formal assertion would have some chance of success.' " *Battis*, 589 F.3d at 681 (quoting *Hakeem*, 990 F.2d at 766). As already discussed, Defendant claims that he previously expressed his refusal to consent to further extensions of time requested by one of his prior lawyers, yet his subsequent counsel continued to request additional time to file pretrial motions to which he never voiced disagreement or objection. *See supra*, n.4. Under such circumstances, the Court is unable to conclude that Defendant frequently and forcefully asserted his speedy trial rights during the pendency of this case.

Defendant now has asserted his right to a speedy trial through the instant Motion, but it comes 59 months after his initial appearance and arraignment, which weighs against him. *See United States v. Jamea*, No. 24-2457, 2026 WL 1506757 at *6 (3d Cir. May 29, 2026) (third *Barker* factor weighed against the defendant when first assertion of speedy trial rights did not occur until four years after his indictment); *United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial was made more than one year after initial appearance). Defendant's speedy trial claim is further undermined by the fact that he repeatedly requested extensions of time to file pretrial motions, and he never lodged an objection to any of the motions for extension of time filed by his co-defendants during the course of this case, nor did he lodge any objection on the several occasions when the Government requested additional time to file a response to one of his pleadings. Given the lack of frequency and force of Defendant's objections to any delay in this case, the Court finds that the third factor weighs heavily against a finding that his Sixth Amendment right to a speedy trial has been violated.

The final and most important factor to consider is any prejudice to Defendant from the delay. *See Hakeem*, 990 F.2d at 760. A defendant can establish prejudice in one of two ways –

13

specific prejudice or presumptive prejudice. *Battis*, 589 F.3d at 682. "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Id.* (quoting *Barker*, 407 U.S. at 532). The Supreme Court has acknowledged that excessive delay can lead to a presumption of prejudice but added that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett*, 505 U.S. at 656.

As for specific prejudice, although Defendant broadly references "oppressive pretrial incarceration" and "anxiety and concern" about the impending trial, (Docket No. 2180, ¶ 14), he does not expressly claim that he has been prejudiced on either basis here. *See Hakeem*, 990 F.2d at 760 (specifying that "the burden of showing prejudice lies with the individual claiming the violation"). Nonetheless, it bears noting that "[c]redit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case." *United States v. Wilson*, 216 F. Supp. 3d 566, 579 (E.D. Pa. 2016) (citing *Hakeem*, 990 F.2d at 762). However, "[p]rejudice that affects the defendant's ability to defend himself . . . 'skews the fairness of the entire system.' " *Id.* (quoting *Barker*, 407 U.S. at 532). To the extent Defendant suggests that his ability to defend himself could be impacted by the passage of time, (*see* Docket No. 2180, ¶ 12), he cites no specific impairment of his defense because of pretrial delay. *See United States v. Chu*, 99 F.4th 610, 615 (3d Cir. 2024) (finding that the fourth *Barker* factor was not satisfied where the defendant "did not argue nor provide evidence that the delay impaired her ability to prepare a defense, and only asserted claims of emotional distress"). Under these circumstances, Defendant has not demonstrated specific prejudice.

14

However, given that the delay in this case exceeds 45 months, prejudice can be presumed. *See Battis*, 589 F.3d at 683 (holding that prejudice is presumed when there is a 45-month delay in bringing a defendant to trial). To reiterate, presumptive prejudice must be viewed in light of the other *Barker* factors. As discussed above, the delay was largely attributable to Defendant, and he failed to assert his speedy trial right in a timely fashion. Accordingly, the final *Barker* factor weighs against him.

### C. Dismissal of the Indictment is not Warranted Under Rule 48(b)(3)

Finally, Defendant also states that he seeks dismissal of the Indictment pursuant to Federal Rule of Criminal Procedure 48(b)(3). (Docket No. 2180, ¶ 19). Although Defendant advances no argument whatsoever in support of dismissal under Rule 48(b)(3), the Court turns to address this undeveloped claim.

Rule 48(b)(3) allows a Court to dismiss an indictment "if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). "A district court's decision to grant or deny a Rule 48(b) motion is discretionary." *Murrietta*, 2022 WL 2117766, at *4 (citing *United States v. Rodriguez-Mendez*, Crim. No. 1:17-15-1, 2021 WL 3025898, at *9 (W.D. Pa. July 16, 2021) (citations omitted)).

"The Third Circuit Court of Appeals has noted that Rule 48(b) is both 'a vehicle for enforcing a defendant's speedy trial right' and 'also a restatement of the court's inherent power to dismiss a case simply for want of prosecution.'" *Rodriguez-Mendez*, 2021 WL 3025898, at *9 (quoting *United States v. Dreyer*, 533 F.2d 112, 113 n. 1 (3d Cir. 1976)). As observed in *Dreyer*, when a Rule 48(b) claim is based on prejudice arising from the delay, rather than simply want of prosecution, the case should be treated on constitutional grounds encompassing the Rule 48(b) claim. *Dreye*r, 533 F.2d at 113 n. 1. Although Defendant cites Rule 48(b)(3) as a basis for

dismissal, his argument likely relates to a Sixth Amendment challenge, which already has been addressed.

Nonetheless, to the extent Defendant's reference to Rule 48(b)(3) is intended to be a request for dismissal based on the Court's inherent authority to dismiss for want of prosecution, the Motion is denied on that basis, as well. As explained by another court in this District, an exercise of a court's inherent authority is appropriate only in certain limited circumstances:

> An exercise of a Court's inherent authority must satisfy two requirements: (1) it "must be a reasonable response to the problems and needs confronting the court's fair administration of justice," and (2) it "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, —— U.S. ——, 136 S. Ct. 1885, 1892, 195 L.Ed.2d 161 (2016) (citations and internal quotation marks omitted). Importantly, a court may exercise its inherent authority only when it is necessary to address improper conduct and to ensure respect for the proceedings. *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019).

*Rodriguez-Mendez*, 2021 WL 3025898, at *10. "Thus, under these principles, a court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." *Id.* (citing *Wright*, 913 F.3d at 371).

Here, the Court will not exercise its discretion to dismiss the Indictment under Rule 48(b) for want of prosecution because Defendant has not alleged, nor has he shown, that the Government has engaged in misconduct in delaying the trial in this case. *See Wright*, 913 F.3d at 372 (dismissal under court's inherent authority not warranted when Government performed diligently and professionally). Further, there is nothing in the record evidencing deliberate or oppressive action by the Government. *See Hunt v. United States*, 456 F.2d 582, 584 (3d Cir. 1972) ("An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials"). Rather, the delay in this case has resulted from motions for extension of time to file

pretrial motions filed by Defendant and/or his co-defendants in this complex drug conspiracy case, as discussed in detail above. *See Murrietta,* 2022 WL 2117766*, at \*4; Rodriguez-Mendez*, 2021 WL 3025898, at \*10 (denying motion to dismiss indictment under the court's inherent authority pursuant to Rule 48(b) where the defendant did not show any misconduct or oppressive action by the Government). Accordingly, the Court will not exercise its discretion to dismiss the Indictment under Rule 48(b)(3).

## III.   **CONCLUSION**

For the reasons set forth herein, there is no basis to dismiss the Indictment against Defendant on speedy trial grounds. Accordingly, his Motion to Dismiss is denied.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: August 6, 2026

cc/ecf:  All counsel of record