**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-218-1 |
| | ) | |
| JAMAAL MARAGH | ) | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Jamaal Maragh's Motion to Suppress Evidence (Cell Site Location Data), (Docket No. 2187), which is opposed by the Government. (Docket No. 2241 at 26-34). For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

During the investigation of this case, Special Agents with the United States Postal Service – Office of Inspector General ("USPS-OIG") and the Drug Enforcement Administration ("DEA") completed a series of applications and affidavits for warrants to obtain cell-site location information ("CSLI")[1] for certain cellular telephones associated with Defendant and other alleged co-conspirators in this case. The affidavits and warrants are filed under seal at Magistrate Nos. 19-713, 19-1016, 19-1249, 19-1370, 19-1570, 19-1571, 19-1796, and 19-1797.

Ultimately, on August 25, 2020, Defendant and 26 co-defendants were charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, for conduct occurring from in and around October 2018 until in and around June 2020. (Docket No. 3).

---

1 The referenced CSLI includes historical call detail information including data sessions and MMS/SMS messages, historical cell tower/cell site information, prospective cell tower information and prospective precise location information (including all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information) pertaining to a subscriber or customer both historically and prospectively for a requested period of time. (*See, e.g.*, Docket No. 2190-1, ¶ 4).

Defendant now moves to suppress the CSLI that was obtained pursuant to the warrants at issue, contending that they were not "based upon the requisite showing of probable cause of individualized suspicion relating to [him]." (Docket No. 2187, ¶ 9). The Government responds that the challenged affidavits set forth sufficient probable cause to support the warrants. (Docket No. 2241 at 27). Even if probable cause was lacking, the Government maintains that the good faith exception to the exclusionary rule applies, therefore no evidence should be suppressed. (*Id.*). After considering the parties' submissions and the affidavits at issue, the Court finds that the Government is correct on both counts, as explained below.

## II. <u>DISCUSSION</u>

The Court has reviewed each of the challenged affidavits and summarizes the content relevant to disposition of Defendant's Motion. The Affidavit at Magistrate No. 19-713 sought the authorization of CSLI and prospective geolocation data for a telephone ending in 1781 (thereinafter, the "19-713 Affidavit"). (Docket No. 2190-1). The 19-713 Affidavit averred that there was probable cause to believe that # 1781 was being used by the Jamaal Maragh Drug Trafficking Organization (the "Maragh DTO") because # 1781 dialed in to the United States Postal Service to check on the status of two seized parcels. (*Id.*, ¶ 6). One seized parcel, which was inbound to this District from Los Angeles, California, contained four kilograms of cocaine, and the second parcel, which was outbound from this District to Jamaal Maragh at an address in Los Angeles, contained $49,900 in United States currency. (*Id.*). The 19-713 Affidavit also described surveillance of Defendant's travel to New York and purported meetings with suspected money launderers. (*Id.*). The affiant, who was an experienced special agent with the USPS-OIG, swore that the disclosure of the CSLI and prospective geolocation information for # 1781 would lead to further evidence of drug trafficking, such as identifying distributors, customers, suppliers, and co-

conspirators. (*Id.*, ¶¶ 1, 2, 7).

The Affidavit at Magistrate No. 19-1016 built on the 19-713 Affidavit and sought the disclosure of CSLI and prospective geolocation data for a telephone ending in 3645 (hereinafter the "19-1016 Affidavit"). (Docket No. 2190-2). The 19-1016 Affidavit averred that there was probable cause to believe that # 3645 was being used by the Maragh DTO. (*Id.*, ¶ 6). To that end, after determining that # 1781, which was associated with Defendant, contacted the United States Postal Service to inquire about two seized parcels containing cocaine and United States currency and then describing surveillance of a money drop that occurred in New York, the 19-1016 Affidavit averred that toll analysis showed # 1781 was in contact with only two numbers around the time of the money drop, one of which was a telephone ending in 6966. (*Id.*, ¶¶ 7-13). Based on the toll analysis and the agents' training and experience, the 19-1016 Affidavit averred that the call activity between # 6966 and # 1781 was consistent with the user of # 6966 directing Defendant, who utilized # 1781, to perform the money drop in New York. (*Id.*, ¶ 13). The 19-1016 Affidavit then described subsequent travel by Defendant that was surveilled by law enforcement during which agents observed that # 1781 was powered off. (*Id.*, ¶¶ 15, 16). While Defendant was in the Los Angeles area in the days that followed, toll analysis showed repeated contact between # 6966 and # 3645, which the experienced agents interpreted as evidence that Defendant discontinued use of # 1781 and replaced it with # 3645. (*Id.*, ¶ 18). As explained in the 19-1016 Affidavit, drug traffickers often change phones to evade detection by law enforcement. (*Id.*). Accordingly, the affiant, who was an experienced special agent with the DEA, swore that the disclosure of the CSLI and prospective geolocation information for # 3645 would lead to further evidence of drug trafficking, such as identifying distributors, customers, suppliers, and co-conspirators. (*Id.*, ¶¶ 1, 19).

Next, the Affidavit at Magistrate No. 19-1249 sought the disclosure of CSLI and prospective geolocation data for a telephone ending in 8906 (hereinafter the "19-1249 Affidavit"). (Docket No. 2190-3). The 19-1249 Affidavit averred that there was probable cause to believe that # 8906 was being used by individuals associated with the Maragh DTO. (*Id.*, ¶ 7). More specifically, the affiant, who was an experienced special agent with the USPS-OIG, believed that Defendant was utilizing multiple numbers, including # 1781, # 3645, and # 8906. (*Id.*, ¶¶ 1, 2, 9). As background, the 19-1249 Affidavit included information contained in the prior Affidavits concerning Defendant's use of #1781 and # 3645. (*Id.*, ¶¶ 11-27). The Affidavit also explained that # 8906 conducted a tracking inquiry on a parcel from Los Angeles mailed to an address in this District which was seized and searched by agents and found to contain two kilograms of cocaine. (*Id.*, ¶¶ 30, 31). The Affidavit further described toll analysis of # 8906 and telephones utilized by other suspected members of the drug trafficking conspiracy, which revealed multiple calls between those telephones. (*Id.*, ¶¶ 32, 34). Based on that toll analysis and the agents' training and experience, the affiant explained that call activity involving # 8906 and the other referenced telephones was consistent with conducting narcotics transactions. (*Id.*). Accordingly, the affiant averred that the disclosure of the CSLI and prospective geolocation information for # 8906 would lead to further evidence of drug trafficking, such as identifying other individuals who were involved in the conspiracy. (*Id.*, ¶ 37).

The Affidavit at Magistrate No. 19-1370 sought the disclosure of CSLI and prospective geolocation data for # 3645 (hereinafter the "19-1370 Affidavit"). (Docket No. 2190-4). The 19-1370 Affidavit averred that there was probable cause to believe that # 3645 was being used by individuals associated with the Maragh DTO. (*Id.*, ¶ 9). More specifically, the affiant, who was an experienced special agent with the DEA, averred that he believed Defendant was utilizing

multiple numbers, including # 1781 and # 3645. (*Id.*, ¶¶ 1, 2, 11). The 19-1370 Affidavit recounted the information contained in the prior Affidavits as detailed above, including that Defendant replaced # 1781 with # 3645. (*Id.*, ¶¶ 13-30). The 19-1370 Affidavit also specified that the user of # 3645 conducted a tracking inquiry on two seized parcels that contained narcotics. (*Id.*, ¶ 33). Consequently, the affiant averred that the disclosure of the CSLI and prospective geolocation information for # 3645 would lead to further evidence of drug trafficking, such as identifying distributors, customers, suppliers, and co-conspirators. (*Id.*, ¶ 38).

The Affidavit at Magistrate No. 19-1570 sought the disclosure of CSLI and prospective geolocation data for # 8906 (hereinafter the "19-1570 Affidavit").[2] (Docket No. 2190-5). As with the prior Affidavits, the 19-1570 Affidavit averred that there was probable cause to believe that # 8906 was being used by individuals associated with the Maragh DTO, and that the affiant, who was an experienced special agent with the USPS-OIG, believed Defendant was utilizing multiple numbers, including # 1781, # 3645, and # 8906. (*Id.*, ¶ 1, 2, 7, 9). The 19-1570 Affidavit repeated the information contained in the prior Affidavits described above, including that the user of # 8906 conducted a tracking inquiry on a parcel searched and seized by agents which contained two kilograms of cocaine. (*Id.*, ¶¶ 11-27, 30, 31). The 19-1570 Affidavit further outlined toll analysis of # 8906 and telephones utilized by other suspected members of the drug trafficking conspiracy, which revealed multiple calls between those telephones that were indicative of conducting narcotics transactions according to the experienced agents. (*Id.*, ¶¶ 32, 34). Therefore, the affiant swore that the disclosure of the CSLI and prospective geolocation information for # 8906 would

2 The Affidavit at Magistrate No. 19-1571, which is included with the 19-1570 Affidavit, sought the disclosure of CSLI and prospective geolocation data for a telephone number ending in 1128, which was not used by Defendant. As the Government points out, Defendant does not have standing to challenge the Affidavit at Magistrate No. 19-1571, (Docket No. 2241 at 33), which he does not dispute.

lead to further evidence of drug trafficking, such as identifying others who were involved in the conspiracy. (*Id.*, ¶ 38).

Finally, the Affidavit at Magistrate No. 19-1796 sought the disclosure of CSLI and prospective geolocation data for # 3645 (hereinafter the "19-1796 Affidavit").[3] (Docket No. 2190-6). Like the prior Affidavits, the 19-1796 Affidavit averred that there was probable cause to believe that # 3645 was being used by individuals associated with the Maragh DTO, and that the affiant, who was an experienced special agent with the USPS-OIG, believed Defendant was utilizing multiple numbers, including # 1781, # 3645, and # 8906. (*Id.*, ¶ 1, 2, 7, 10). The 19-1796 Affidavit included the information contained in the prior Affidavits as described above, including that Defendant replaced # 1781 with # 3645. (*Id.*, ¶¶ 14-28). The 19-1796 Affidavit also averred that the user of # 3645 conducted a tracking inquiry on a seized parcel that contained one kilogram of cocaine. (*Id.*, ¶ 38). Accordingly, the affiant averred that the disclosure of the CSLI and prospective geolocation information for # 3645 would lead to further evidence of drug trafficking. (*Id.*, ¶ 41).

**A. The Affidavits Established Probable Cause for Issuance of the Warrants to Obtain CSLI for Telephones Ending in # 1781, # 3645, and # 8906.**

The Fourth Amendment protects against "unreasonable searches and seizures" and requires warrants to be based "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Supreme Court has held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," thus the Government must generally obtain a warrant supported by probable cause to obtain an individual's historical CSLI.

---

3 The Affidavit at Magistrate No. 19-1797, which is included with the 19-1796 Affidavit, sought the disclosure of CSLI and prospective geolocation data for a telephone number ending in 3208, which was not used by Defendant, as the Government notes. (Docket No. 2241 at 33). Given that Defendant did not utilize # 3208, he does not dispute that he lacks standing to challenge the Affidavit at Magistrate No. 19-1797.

*United States v. Carpenter*, 585 U.S. 296, 310, 316 (2018). The Supreme Court did not address in *Carpenter* whether a warrant supported by probable cause also is required to collect real-time CSLI. *Id.* at 316. Although that issue remains an open question, the Government does not argue that warrants were unnecessary to acquire the real-time CSLI for # 1781, # 3645, and # 8906, but rather maintains that the challenged Affidavits established probable cause for issuance of the warrants to obtain the CSLI that was collected in this case. The Government is correct.

The legal standard applicable to review of a magistrate judge's determination of probable cause is well established. Initially, "[a] magistrate may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). As the Court of Appeals has instructed, "[o]nce the magistrate has made this initial determination, the task of a reviewing court is a 'modest' one." *United States v. Brewer*, 708 F. App'x 96, 99 (3d Cir. 2017) (quoting *United States v. Conley*, 4 F.3d 1200, 1205 n.2 (3d Cir. 1993)). Specifically, a district court "owes the magistrate's probable-cause determination 'great deference,' and it must leave that determination undisturbed 'so long as the magistrate had a substantial basis for' finding probable cause." *Id.* (quoting *Gates*, 462 U.S. at 236). In summary, a warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found."[4] *Conley*, 4 F.3d at 1205.

Turning to the Affidavits at issue here, it bears emphasis that an affidavit should establish that "there is a fair probability that contraband or evidence of a crime will be found in a particular

4 In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [the court may] not consider information from other portions of the record." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Stated otherwise, the district court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). Given that this Court's review is confined to the "four corners" of the Affidavits that were before the Magistrate Judges who issued the warrants, no evidentiary hearing is required in this case.

place." *Gates*, 462 U.S. at 238. "This connection or 'nexus' is an expression of the requirement that probable cause exists to believe that evidence of an offense will be found at the place to be searched and can be made by inference." *United States v. Bowers*, 548 F. Supp. 3d 504, 509 (W.D. Pa. 2021) (citing *United States v. Stearn*, 597 F.3d 540 (3d Cir. 2010)). As other courts have recognized, "[m]odern cell phones present unique challenges for courts analyzing the nexus requirement." *See United States v. Tanzil*, No. 25-1102, 2025 WL 3244494, at *3 (6th Cir. Nov. 20, 2025); *United States v. Rashwan*, 684 F. Supp. 3d 347, 355 (E.D. Pa. 2023) (observing that "the traditional 'nexus' between the place to be searched and the items to be seized arguably breaks down in the cell phone context").

For instance, in considering whether a search warrant permitting the Government to obtain location data from a defendant's cell phone was supported by probable cause, a sister court contemplated: "[m]ust the affidavit show only a fair probability that the phone's data 'will aid in a particular' investigation and disclose evidence of criminal activity," or, more stringently, "must it show, say, a fair probability that the phone itself is being used 'in connection with criminal activity?' " *Rashwan*, 684 F. Supp. 3d at 355 (quoting *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021)). In analyzing the matter, the *Rashwan* court observed that "an affidavit may establish 'a fair probability that ... evidence of a crime will be found in a particular place' through not only 'direct evidence linking the crime with the place to be searched,' but also inferences based on 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and ... where a criminal might hide [evidence].' " *Id.* at 356 (quoting *Stearn*, 597 F.3d at 554). In light of this authority, the court reasoned that "a cell phone's nexus to criminal activity need not arise solely as an instrument that facilitates the charged crime," and thus law enforcement may search a phone "not only if it is a vehicle for criminal activity, but also if there exists a fair

probability that it contains evidence of a crime - such as location data placing an individual at a [particular location].” *Id.*

In arguing that the warrants to obtain CSLI were not supported by probable cause, Defendant primarily contends that the Affidavits lacked specific information that he actually used # 1781, # 3645, and # 8906. (*See* Docket No. 2188 at 3, 5, 6, 7, 8). Nonetheless, he cites no authority for his assertion that the Affidavits were required to contain such information in order to establish probable cause to acquire the CSLI for those telephones. Contrary to Defendant’s position, probable cause exists for issuance of a warrant to obtain CSLI if there exists a fair probability that the particular telephone contains evidence of a crime – such as location data that would lead to further evidence of criminal activity. *See Rashwan*, 684 F. Supp. 3d at 356. Each of the Affidavits summarized above contains more than ample information to conclude that a fair probability existed that the CSLI for # 1781, # 3645, and # 8906 would lead to further evidence of drug trafficking activity – such as the location of the user of the telephone in question (who had, *inter alia*, utilized the referenced telephones to track parcels containing significant distribution quantities of controlled substances), and to identify other co-conspirators who supplied and distributed the controlled substances.

Based on each Affidavit, the reviewing Magistrate Judge issued a warrant to obtain the CSLI for # 1781, # 3645, and # 8906. Upon review, this Court finds that the information contained in the “four corners” of the Affidavits as detailed above was sufficient for each Magistrate Judge to have determined that there was a fair probability that the CSLI for the referenced telephones would disclose evidence of drug trafficking activity. Consequently, the Court finds that each Magistrate Judge had a substantial basis for concluding that probable cause existed for issuance of the warrants to obtain CSLI for the telephones ending in # 1781, # 3645, and # 8906.

**B. <u>Even if Probable Cause Was Lacking, the Good Faith Exception Would Apply to Law Enforcement's Reliance on the Warrants to Obtain the CSLI.</u>**

Even if the Court were to conclude that the warrants to obtain the CSLI were not supported by probable cause, the good faith exception to the exclusionary rule would apply here. The law applicable to the good faith exception is summarized as follows:

> The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule - to deter police misconduct - would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20).
>
> The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:
>
> > 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> >
> > 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> >
> > 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> >
> > 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.
>
> *Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.' " *Id.* (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

*United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1105733, at *15 (W.D. Pa. Mar. 24,

2017).

Defendant does not address the good faith exception, let alone claim that any of the four limited circumstances apply. Any attempt to do so would be unavailing because there is nothing in the record to suggest that the Magistrate Judges issued the warrants in reliance on deliberately or recklessly false Affidavits, or that they abandoned their judicial role and failed to act in a neutral and detached manner. Similarly, any claim that the warrants were so facially deficient that they failed to particularize the target telephone or the CSLI to be obtained is unsupported by the record. Finally, the warrant Affidavits were not so lacking in indicia of probable cause that it was entirely unreasonable for law enforcement to rely on them in acquiring the CSLI. As discussed above, under the totality of the circumstances, the information contained in the Affidavits established probable cause for issuance of the warrants to obtain the CSLI. *See supra* at 8-9.

In sum, even if the warrants to acquire the CSLI for # 1781, # 3645, and # 8906 were deemed insufficient, "[t]he Fourth Amendment's application to cell phone location data is a nuanced, developing area of law . . . [thus,] law enforcement had no basis to believe . . . [that the warrants at issues were] inconsistent with the law." *Rashwan*, 684 F. Supp. 3d at 357 n.5 (finding that search warrant to obtain location data from a defendant's cell phone was supported by probable cause and alternatively finding that law enforcement relied on warrant in good faith). The record in this case simply does not support a finding that one of the four limited circumstances which permit the avoidance of the good faith exception apply here. *See Tracey*, 597 F.3d at 151. Consequently, suppression is not warranted.

## III. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Suppress Evidence (Cell Site Location Data), (Docket No. 2187), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: August 31, 2026

cc/ecf: All counsel of record